UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAR 3 1 2006

LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-146-GWU

CHRISTOPHER BOWLING,                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Christopher Bowling, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of polysubstance dependence (in remission) and depression. (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Bowling retained the residual functional capacity to perform his past relevant work as an assembler and, therefore, was not entitled to benefits. (Tr. 24-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he had less than "severe" physical limitations and no exertional restrictions, "but would have non-exertional mental restrictions, based on [exhibit] 11 F [; h]owever, he would still be able to understand and recall material, [be] able to make a [mental] effort needed to complete tasks, able to function in an object focus[ed] setting, and able to handle

7

routine situations." (Tr. 559). The VE responded that the person could perform the plaintiff's past relevant work as a furniture assembler, and also listed other jobs that such a person could perform. (Tr. 559-60).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Bowling testified that he had stopped his last job as a furniture assembler in 1991 due to nervousness. (Tr. 545-6). He also could not work because he had pain in his left leg from a steel rod which had been inserted many years earlier after a bad fracture, and arthritis in his back, making it difficult for him to lift, stand and sit. (Tr. 544). He still felt nervous in public, although he had been able to go to church for several years. (Tr. 548-9). He admitted to a history of drug abuse, but denied current use. (Tr. 557). The treatment at a Comprehensive Care Center (CCC) was somewhat helpful. (Tr. 551).

In terms of specific mental functional restrictions, the ALJ rejected the opinion of Reba Moore, a psychologist who examined Mr. Bowling on one occasion and concluded that he had mild mental retardation, a major depressive disorder, and a "seriously limited but not precluded" ability to perform in most areas. (Tr. 179-87).

The ALJ noted that Mr. Bowling had lied about his history of drug abuse to Moore.[1]

Also, achievement testing done at the same time showed a seventh grade reading

level,  which was inconsistent with mild mental retardation. For these reasons, in

combination with the findings of other mental examiners that Mr. Bowling had normal

---

[1]By way of background, medical records in the transcript show that the plaintiff was voluntarily admitted to the Psychiatric Center at the Hazard, Kentucky Appalachian Regional Hospital (ARH) from February 26 to March 6, 2002 for depression, nervousness, and a feeling several days earlier that he was going to shoot himself. (Tr. 114). He denied suicidal thoughts since then. On admission, he was given a Global Assessment of Functioning (GAF) score of 35. (Tr. 114-15). A drug screen was positive for benzodiazepines and opiates, and Mr. Bowling was put through a detoxification program. (Tr. 115, 119). At the time of discharge, his mood was said to be optimistic, his affect normal, and his GAF was given 60. (Tr. 115). He was given a diagnosis of recurrent major depression with dysthymia and a substance induced mood disorder. (Id.).

Medical records from the CCC show that the plaintiff had been treated starting in January, 1992 with complaints of depression, sleep problems, and nervousness, and at the time he was examined by the staff psychiatrist, Dr. John Schremly, on February 7, 2002, the plaintiff denied ever having used drugs or alcohol. (Tr. 152). Dr. Schremly found Mr. Bowling to be tense but with no signs of psychosis, and noted that he appeared to be of average intelligence. (Tr. 153). He was diagnosed with moderate major depression, and given Prozac. When he returned on February 26th, he reported a suicide attempt and was willing to check into the ARH. After discharge from ARH, he continued treatment, and by March 28th, reported that Effexor was helping his depression and Remeron was helping him sleep. (Id.).

The plaintiff was again admitted to the ARH Psychiatric Center in June, 2002, initially claiming he was suicidal, but later reporting a history of taking 15 or more Xanax or Lorcet tablets a day for 15 years. (Tr. 162). He admitted that he had lied about being suicidal just to get in, and reiterated that his main goal was to get a disability check. (Id.). He denied any medical problems except for a steel rod in his left thigh. (Id.). He was "detoxed" during a "relatively uneventful" stay and refused further counseling for polysubstance abuse. (Tr. 163). At discharge, he was given diagnoses of polysubstance dependence, substance induced mood disorder, major depressive disorder, and "rule out" malingering, with a GAF score of 70. (Tr. 164).

intellectual functioning, the ALJ rejected Ms. Moore's report in its entirety. (Tr. 20).

The only other sources to give specific mental restrictions were state agency reviewing psychologists, both of whom concluded that the plaintiff would have a "moderately limited" ability to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. (Tr. 208-9, 213-14).

While the psychologists also indicated that the person would be able to understand and recall material, maintain the mental effort needed to complete tasks, function in an object focused setting, and handle routine situations (Tr. 215) as specified to the VE, it seems that all the potentially significant limitations in their opinions were left out of the hypothetical question. While the ALJ's language was somewhat ambiguous, the Commissioner has clearly not argued that such limitations were incorporated by reference. Rather, the Commissioner suggests that only these latter factors were part of the functional capacity assessment, Section I of the form states that it is for evaluation "of the individual's capacity to sustain [mental] activity

10

over a normal workday and workweek, on an ongoing basis." (Tr. 208). Section III of the form is for a "detailed explanation of the degree of limitation for each category," and, even assuming for the sake of argument that this is the only relevant part of the form for purposes of a functional capacity, the state agency psychologists did not give any such detailed explanation.

Therefore, a remand will be required for additional vocational testimony based upon the restrictions given by the state agency reviewers.

The plaintiff also argues that the ALJ committed error in failing to find that he had a "severe" physical impairment. Dr. J. J. James, his treating family physician, completed a physical functional capacity assessment in October, 2003, limiting the plaintiff to less than full-time standing, walking, and sitting, due to spasm and tenderness in the lumbar area. (Tr. 264-7). The ALJ rejected these conclusions because they were disproportionate to the objective findings, which included a lumbosacral spine x-ray showing only mild degenerative changes. (Tr. 252). The ALJ also rejected the highly restrictive functional capacity assessment of a Dr. Mahboob, who indicated that he based his opinion on the plaintiff's subjective statements. (Tr. 189-92). The ALJ also noted that it was not clear why Dr. Mahboob would place a restriction on the plaintiff's ability to handle objects merely because he cited complaints of back and leg pain. (Tr. 21). The ALJ noted that, after a physical examination by Dr. Mark Carter at which the only abnormality noted was a

11

"mild"left limp and a scar consistent with open reduction and internal fixation of a femur fracture (Tr. 158-61), no functional limitations were suggested by Dr. Carter. However, the ALJ went on to cite a state agency consulting physician who discussed the evidence and concluded that the plaintiff's physical impairment was less than "severe." (Tr. 21). Although there is evidence that a state agency physician may have reached this conclusion (Tr. 34), this was prior to the receipt of the opinion from the treating source, and no detailed rationale from the physician is in the Court transcript. Since the case is being remanded on other grounds, the Commissioner may wish to clarify or add to the evidence in this regard.

The plaintiff has also submitted additional evidence to the Appeals Council, which may be considered along with any other new evidence on remand.

The decision will be remanded for further consideration.

This the ___3/___ day of March, 2006.

G. WIX UNTHANK
SENIOR JUDGE

12